UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

CHRISTOPHER G. PARKER,

     Plaintiff,

v.                               Case No. 3:19-cv-126-MCR-HTC

MARK T. ESPER,
SECRETARY OF DEFENSE,

     Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff, Christopher Parker, proceeding *pro se* and *in forma pauperis*, files this employment discrimination action against Defendant Mark T. Esper, Secretary of the Department of Defense. This matter is before the undersigned on Esper's Motion for Summary Judgment (ECF Doc. 52) and Supplement to the Motion (ECF Doc. 60).

Defendant moves for summary judgment on three grounds: (1) this Court lacks jurisdiction because agencies of the United States are immune from liability for a discrimination claim under Title I under American with Disabilities Act of 1990 ("ADA"); (2) the agency at issue was not a joint employer of the Plaintiff; and (3) Plaintiff has failed to prosecute this case or comply with the Court's orders. Upon

consideration, and for the reasons set forth herein, the undersigned recommends that the motion be GRANTED.

## I.    FACTUAL BACKGROUND

Plaintiff worked as a material handler at Hurlburt Field Commissary (the "Commissary"). ECF Doc. 52 at ¶ 5. Plaintiff was placed at the Commissary by the Brevard Achievement Center ("BAC"), a staffing firm which has a contract with the Commissary to provide self-stocking and custodial services. ECF Doc. 52 at ¶¶ 5, 8. The Defense Commissary Agency ("DeCA") is an agency of the United States Department of Defense ("DoD") and operates the Commissary. ECF Doc. 52 at ¶ 7. Plaintiff alleges DeCA and BAC are his joint employers. ECF Doc. 1 at ¶¶ 6, 9.

Plaintiff alleges he suffers from Attention Deficit Hyperactivity Disorder and dyslexia. ECF Doc. 1 at ¶ 3. Plaintiff claims he was discriminated against when he was suspended on October 27, 2016, and terminated on November 10, 2016. Plaintiff claims he was also discriminated against when his supervisors failed to stop "people from unnecessarily gathering and talking in areas he worked in the warehouse." ECF Doc. 1 at ¶ 6. B. Specifically, Plaintiff alleges the DeCA store manager and director were "bias and discriminatory towards Plaintiff, allowed vendors and others to talk and get in the way of the work and create[ed] an unsafe work area." ECF Doc. 1 at ¶ 10.

Plaintiff filed an informal complaint with DeCA's Equal Employment Office (the "DeCA EEO") on December 4, 2016. ECF Doc. 1 at ¶ 6; ECF Doc. 52-2 at 7-11; 29 C.F.R. § 1614.105(a)(1). Subsequently, he filed a formal complaint with DeCA on January 18, 2017. ECF Doc. 1 at ¶ 6; 29 C.F.R. § 1614.106. DeCA dismissed the complaint and Plaintiff filed an appeal to the Equal Employment Opportunity Commission (the "Commission") on August 11, 2017. ECF Doc. 1 at 9; 29 C.F.R. §§ 1614.107; 1614.401(a), 1614.402(a). The Commission initially reversed the dismissal and remanded the matter "for the Agency to gather information on whether the Commissary was the Complainant's common law joint employer, and then accept claims (1) and (2) for investigation or issue a final decision dismissing them." ECF Doc. 1 at 9.

On remand, after gathering additional information, DeCA issued a final decision dismissing the complaint and finding that Plaintiff was an employee of BAC, not DeCA. ECF Doc. 1 at 9. The Commission affirmed that decision on appeal, finding that DeCA "did not have sufficient control (or right to control) over Complainant's employment to be deemed his common law joint employer." ECF Doc. 1 at 9. The Plaintiff filed a motion for reconsideration of the Commission's decision, which was also denied. ECF Doc. 1 at 8-11; 29 C.F.R. § 1614.405(b).

## II.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact" and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c).  The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).  An issue is genuine if there is sufficient evidence such that a reasonable jury could return a verdict for either party.  *Id.* at 248.  Similarly, an issue is material if it may affect the outcome of the suit under governing law.  *Id.*

The moving party bears the burden of showing the absence of any genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  In deciding whether the moving party has met this initial burden, the Court must review the record and all reasonable inferences drawn from the record in the light most favorable to the non-moving party.  *Whatley v. CNA Ins. Co.,* 189 F.3d 1310, 1313 (11th Cir. 1999).  Once the Court determines that the moving party has met its burden, the burden shifts and the non-moving party must present specific facts showing that there is a genuine issue for trial that precludes summary judgment. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, (1986).

"The evidence presented cannot consist of conclusory allegations, legal conclusions or evidence which would be inadmissible at trial." *Demyan v. Sun Life Assurance Co. of Canada,* 148 F.Supp.2d 1316, 1320 (S.D. Fla. 2001) (citing *Avirgan v. Hull,* 932 F.2d 1572, 1577 (11th Cir. 1991)). The Court should grant summary judgment if Plaintiff fails to show sufficient evidence of any essential element. *Celotex,* 477 U.S. at 322–23. Conversely, if reasonable minds could find a genuine issue of material fact then summary judgment should be denied. *Miranda v. B & B Cash Grocery Store, Inc.,* 975 F.2d 1518, 1532 (11th Cir. 1992). "If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment." *Allen v. Bd. of Pub. Educ.,* 495 F.3d 1306, 1315 (11th Cir. 2007).

## III.   DISCUSSION

In support of his motion for summary judgment, Defendant relies upon (1) Plaintiff's failure to respond to Defendant's First Requests for Admissions to Plaintiff; (2) the Declaration of Kevin J. Hennelly, DeCA's EEO Director; and (3) Plaintiff's responses to the DeCA EEO's pre-complaint intake questionnaire. "When a motion for summary judgment has been made properly, the nonmoving party may not rely solely on the pleadings, but by affidavits, depositions, answers to interrogatories, and admissions must show that there are specific facts demonstrating

that there is a genuine issue for trial." *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Plaintiff, however, did not file a response to Defendant's motion and, thus, has provided no evidence in opposition to the motion for summary judgment.[1]

Nonetheless, because Plaintiff is proceeding *pro se*, the undersigned will consider the factual allegations in his complaint, which were executed under penalty of perjury. *See Sammons v. Taylor,* 967 F.2d 1533, 1545 n. 5 (11th Cir.1992) ("facts alleged in an inmate's sworn pleading are sufficient and . . . a separate affidavit is not necessary"). Additionally, "*pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." *Hughes v. Lott*, 350 F.3d 1157, 1160 (11th Cir. 2003). However, "a pro se litigant does not escape the essential burden under summary judgment standards of establishing that there is a genuine issue as to a fact material to his case in order to avert summary judgment." *Brown,* 906 F.2d at 670.

As discussed further below, the undersigned finds that (1) while the Court may not have jurisdiction over a claim against the Defendant under the Americans with Disabilities Act ("ADA"), it does have jurisdiction under the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 791, *et seq.*, and (2) Defendant was not Plaintiff's

---

[1] Pursuant to the Court's order at ECF Doc. 54 and the Local Rules, Plaintiff had until April 3, 2020, to file a response to the motion for summary judgment. On April 6, 2020, Plaintiff contacted the clerk's office and stated that he would be filing a response on April 7, 2020. *See Staff Notes*, online docket. While that date was beyond the date provided by the Court and in the local rules, the undersigned waited until after that date to take the motion under advisement to allow Plaintiff an opportunity to submit his response. Plaintiff, however, did not file a response.

joint employer and, therefore, cannot be liable to Plaintiff for discrimination under the Rehabilitation Act.

### A.    Lack Of Subject Matter Jurisdiction

In Plaintiff's complaint, he identifies Title VII of the Civil Rights Act of 1964 ("Title VII") and the ADA as the jurisdictional and statutory basis of his claims. ECF Doc. 1 at 4.  Title VII makes it unlawful for an employer to intentionally discriminate against its employees based upon protected personal characteristics including race, color, religion, sex, and national origin.  *See* 42 U.S.C. § 2000e-2(a). Plaintiff does not set forth any facts to support a Title VII claim.  While Plaintiff alleges he suffers from a disability, he does not allege that he falls in a protected class under Title VII or that he was discriminated against based upon his race, color, religion, sex, or national origin.  *See Adams v. Austal, U.S.A., L.L.C.*, 754 F.3d 1240, 1248–49 (11th Cir. 2014).  Thus, as an initial matter, the undersigned finds that Plaintiff has provided no basis for seeking relief under Title VII and that his claims are based solely on disability discrimination.

Defendant argues he is entitled to summary judgment because the United States is immune from liability under the ADA, and thus, this Court lacks jurisdiction over Plaintiff's claim.  "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit."  *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994) (citations omitted).  A waiver of sovereign immunity "cannot be

implied but must be unequivocally expressed." *United States v. King*, 395 U.S. 1, 4 (1969). Plaintiff "bears the burden of establishing that the federal government has waived its sovereign immunity with respect to [his] claim[s]." *Thompson v. McHugh*, 388 F. App'x 870, 872 (11th Cir. 2010) (per curiam).

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). The issue of "[s]overeign immunity is jurisdictional in nature." *Meyer*; 510 at 475; *United States v. Mitchell*, 463 U.S. 206, 212 (1983) ("It is axiomatic that the United States may not be sued without its consent and that existence of consent is a prerequisite for jurisdiction."). Thus, if sovereign immunity applies, a federal court lacks jurisdiction to entertain the suit. *Meyer*, 510 U.S. at 475.

The ADA addresses discrimination against individuals with disabilities in three general areas: employment (Title I), public services (Title II), and public accommodations and services operated by private entities (Title III). *Agee v. United States,* 72 Fed. Cl. 284, 289 (2006) (citing Americans with Disabilities Act of 1990, Pub.L. No. 101–336, 104 Stat. 327 (1990) (currently codified as 42 U.S.C. §§ 12101–12213 (2000))). Title I of the ADA prohibits a "covered entity" from discriminating against a qualified individual on the basis of disability in regard to employment. 42 U.S.C. § 12112(a). A "covered entity" is "an employer, employment agency, labor organization, or joint labor-management committee." 42

U.S.C. § 12111(2). The ADA, however, expressly exempts the United States from the definition of "employer." *See* 42 U.S.C. § 12111(5)(B)(I). Thus, Congress has not waived federal sovereign immunity for ADA claims. *See Walker v. Dep't of Veteran Affairs*, 2017 WL 2979700 at *2 (N.D. Fla. June 9, 2017) (dismissing ADA claim against VA based on sovereign immunity and lack of subject matter jurisdiction), *report and recommendation adopted*, 2017 WL 2971860 (N.D. Fla. July 12, 2017); *Fox v. United States*, 2012 WL 2685067, at *1 (S.D. Miss. July 2, 2012) ("to the extent Fox alleges claims against the United States under the ADA, those claims are dismissed for lack of subject matter jurisdiction) (citing *Agee v. United States*, 72 Fed. Cl. 284, 289 (2006)).

The fact that DeCA, an agency of the DoD, which is an agency of the United States, is immune from liability under Title I of the ADA, however, does not necessarily mean that summary judgment should be entered in favor of Defendant. This is so because the United States is not immune under the Rehabilitation Act, which provides the same relief as the ADA. Indeed, the Rehabilitation Act is the exclusive remedy available to federal employees for alleged disability discrimination. *See Rio v. Runyon*, 972 F. Supp. 1446, 1454–55 (S.D. Fla. 1997), *aff'd* 159 F.3d 1160 (11th Cir. 1998), citing, *McGuinness v. United States Postal Service,* 744 F.2d 1318, 1322 (7th Cir.1984).

Since Plaintiff is proceeding *pro se,* the undersigned will construe Plaintiff's complaint liberally to include the Rehabilitation Act even though he does not reference it in his complaint. The undersigned notes that the Rehabilitation Act was not an option for Plaintiff to check on the complaint form he used to file this action. ECF Doc. 1. Additionally, "the standard for determining liability under the Rehabilitation Act is the same as that under the ADA." *See Sutton v.* Ladder, 185 F.3d 1203, 1207 n. 5 (11th Cir. 1999). Also, Defendant addresses the Rehabilitation Act in his motion. Thus, there is no prejudice to Defendant in the Court so construing the complaint.

### B.    DeCA's Status As Plaintiff's Joint Employer

For Defendant to be subject to liability for discrimination under the Rehabilitation Act, DeCA must be Plaintiff's employer. Plaintiff alleges that DeCA was his joint employer with BAC. The basis for finding that two or more entities are joint employers "is simply that one employer while contracting in good faith with an otherwise independent company has retained for itself sufficient control of the terms and conditions of employment of the employees who are employed by the other employer" so that even though the two employers are in fact separate entities, "they share or co-determine those matters governing the essential terms and conditions of employment." *Virgo v. Riviera Beach Assoc., Ltd.,* 30 F.3d 1350, 1360 (11th Cir. 1994). In determining whether an entity is an individual's employer, the

Eleventh Circuit considers:  (1) whether the employment took place on the premises of the alleged employer; (2) how much control the alleged employer exerted and (3) whether the alleged employer had the power to fire, hire or modify employment conditions.  *See Morrison v. Magic Carpet Aviation*, 383 F.3d 1253, 1255 (11th Cir. 2004)*, citing *Welch v. Laney,* 57 F.3d 1004, 1011 (11th Cir. 1995).

Also, while not binding law, the Eleventh Circuit has expressed that "the factors listed in the pattern instruction fairly target 'the economic realities of the [employment] relationship viewed in light of the common law principles of agency and the right of the employer to control the employee,' which is the ultimate inquiry when determining whether an employment relationship existed."  *Scott v. Sarasota Doctors Hosp., Inc.,* 688 F. App'x 878, 887 n. 12 (11th Cir. 2017), citing *Cobb v. Sun Papers, Inc.*, 673 F.2d 337, 341 (11th Cir. 1982).  Those factors are:

    (a) the nature and degree of control over the employee and who exercises that control;
    (b) the degree of supervision, direct or indirect, over the employee's work and who exercises that supervision;
    (c) who exercises the power to determine the employee's pay rate or method of payment;
    (d) who has the right, directly or indirectly, to hire, fire, or modify the employee's employment conditions;
    (e) who is responsible for preparing the payroll and paying wages;
    (f) who made the investment in the equipment and facilities the employee uses;
    (g) who has the opportunity for profit and loss;
    (h) the employment's permanence and exclusiveness;
    (i) the degree of skill the job requires;
    (j) the ownership of the property or facilities where the employee works;

(k) the performance of a specialty job within the production line integral
    to the business.

Eleventh Circuit Civil Pattern Jury Instruction 4.25 (2020).

The instruction also states that "while no single factor is determinative . . . the extent of the right to control the means and manner of the worker's performance is the most important factor." *See id.* Indirect control is insufficient to deem a defendant as a joint employer. *Morrison,* 383 F.3d at 1256. Whether the entity alleged to be a joint employer has retained sufficient control is "essentially a factual question," and whether the resolution of that issue is for the court or for the jury depends upon whether genuine issues of material fact exist as to the exercise or retention of control. *Virgo*, 30 F.3d at 1360.

Defendant relies on Plaintiff's failure to respond to Defendant's Requests for Admissions and the information he provided to the DeCA EEO counselor to show that Plaintiff was paid by BAC, accrued leave time from BAC; requested leave from BAC; and that disciplinary actions and performance evaluations were carried out by BAC. Defendant also submits that Plaintiff was terminated by BAC. Thus, Defendant contends that the undisputed evidence shows that BAC is Plaintiff's sole employer.

### 1. Requests for admissions

Pursuant to Fed. R. Civ. P. 36(a), a "matter is *admitted unless, within 30 days after being served* [with the request for admission], the party to whom the request is

directed serves on the requesting party a written answer or objection addressed to the matter." Fed. R. Civ. P. 36(a) (emphasis added). Plaintiff failed to respond to Defendant's request for admissions within the allotted time frame. In fact, the Plaintiff failed to respond even *after* this Court specifically ordered him to do so. ECF Docs. 47, 55. Thus, for purposes of this motion, the facts set forth in the requests are deemed admitted. *See e.g., Rain Bird Corp. v. Taylor,* 665 F. Supp. 2d 1258, 1263–64 (N.D. Fla. 2009) (deeming admitted facts derived from admissions by virtue of *pro se* defendant's failure to serve a written answer or objection); *United States v. JBA Motorcars, Inc.*, 839 F. Supp. 1572, 1575–76 (S.D. Fla. 1993) (deeming each matter raised in the United States' requests for admission as conclusively established because of the defendant's failure to timely respond);

The matters deemed admitted and relevant to a determination of whether DeCA was Plaintiff's joint employer are as follows:

1. Plaintiff made a request to BAC's Human Resources Services Administrator for reasonable accommodation.
2. Prior to his termination from BAC, he was offered a position at Naval Station Corry Field, which he declined.
3. Plaintiff did not directly report to DeCA.
4. Plaintiff received assignments from BAC.
5. Plaintiff received his salary and pay from BAC.
6. BAC set Plaintiff's hours and schedule when he worked at the Commissary.
7. BAC conducted Plaintiff's performance evaluations while he worked at the Commissary.
8. He had a contract with BAC to provide the work he performed at the Commissary.

9. He submitted leave requests to BAC during the time he worked at the Commissary.
10. He was terminated solely by BAC.

ECF Doc. 52-1, Exhibit A.

### 2. Pre-complaint intake form responses

As part of the DeCA EEO pre-complaint intake process, Plaintiff met with an EEO Counselor and completed a pre-complaint intake questionnaire. ECF Doc. 52-2 at ¶ 8. Plaintiff's responses to the questionnaire are as follows:

1. Plaintiff checked "no" to a question regarding whether he was employed by the federal government.
2. He responded that he was employed by BAC and was employed there from August 8, 2014 to October 27, 2016.
3. He responded that he did not report directly to a DeCA supervisor, but that he was required to run a forklift and any other job requested of him.
4. In response to whether he was assigned duties by a DeCA supervisor, he stated "at times they made requirement and duties such as breakdown frozen, setup displays, uses fork lift to move plates and etc."
5. In response to whether he received direct assignments from BAC, he stated "Yes, my job as material handler."
6. In response to a question about who paid him, Plaintiff responded BAC.
7. In response to a question about whether he accrued leave while working at the Commissary, he responded "Yes, from BAC".
8. In response to a question about who set his work schedule and hours while working at Hurlburt, he responded BAC.
9. In response to a question about from whom he would request leave when he worked at the Commissary, he responded BAC.
10. In response to a question about who conducted his performance evaluations when he worked at the Commissary, he responded BAC.
11. In response to a question about who administered disciplinary action while he was at the Commissary, he answered BAC.

12. In response to a question regarding whether he was under contract with DeCA or BAC to provide work at the Commissary, he responded BAC.

ECF Doc. 52-2 at 6-11, Exhibit B.

### 3. DeCA was not Plaintiff's joint employer.

Plaintiff has provided the Court with no evidence to dispute the above evidence. Plaintiff alleges in his complaint his work area and equipment are provided by DeCA and that the DeCA store director has the authority to direct his schedule, including barring him from any shift, the use of equipment and the right to be on the premises. ECF Doc. 1 at ¶ 8. Even accepting those allegation as true, it is not dispositive of the issue. *See Scott v. Sarasota Doctors Hosp., Inc.,* 688 F. App'x 878, 887 (11th Cir. 2017) (affirming denial of motion for new trial finding evidence supported jury's determination that the Hospital was not plaintiff's joint employer where evidence included that "while the Hospital had the power to order Scott's removal, only EmCare had the power to actually terminate her employment"); *In re Enter. Rent-A-Car Wage & Hour Employment Practices Litig.,* 683 F.3d 462, 470 (3d Cir. 2012) (finding mere recommendations not to be dispositive with regard to the issue of control in the context of the joint employment analysis); *Jerome v. Hertz Corp.,* 15 F.Supp. 3d 1225, 1238-39 (M.D. Fla. 2014) (finding defendant's "general instructions to Plaintiffs regarding cleaning, work

attire, and what time to appear at work not to be dispositive of the overall joint employment issue").

In Plaintiff's responses on the pre-complaint questionnaire, he admits he received his assignments from BAC, that BAC set his work hours and schedule, and that he did not report to a DeCA supervisor. These factors show that DeCA was not his joint employer. His statement that "at times" a DeCA supervisor imposed requirements or duties on him, such as asking him to break down or set up a display or move palates is not the type of control sufficient to render DeCA Plaintiff's joint employer. *See Diaz v. Century Bank,* No., 2013 WL 2046548, at *6 (S.D. Fla. May 14, 2013) ("infrequent assertions of minimal oversight do not constitute the requisite degree of supervision") (quoting *Martinez–Mendoza v. Champion Intern. Corp.,* 340 F.3d 1200, 1211 (11th Cir.2003)).

Additionally, it is undisputed that Plaintiff was paid by BAC, accrued leave time at BAC, and requested leave time from BAC. Plaintiff also admits that BAC conducted Plaintiff's performance evaluations and carried out disciplinary actions. These are factors weighing against a finding that DeCA was Plaintiff's joint employer. *See In re Enterprise,* 683 F.3d 462, at 471 (concluding the defendant was not a joint employer because the defendant had no authority to hire or fire, promulgate work rules, or set compensation, benefits, schedules, and pay rates, and also because the defendant did not supervise, discipline, or control employee

records); *Foy v Pat Donalson Agency*, 946 F.Supp. 2d 1250, 1267, 1269 (N.D. Ala. 2013) (finding on summary judgment that evidence showed Nationwide was not plaintiff's joint employer where it did not pay wages, conduct performance evaluations, or exercise control over the plaintiff in a way that was inconsistent with an independent contractor relationship).

Moreover, in Hennelly's Declaration he states that DeCA did not make the decision to terminate Plaintiff's employment with BAC or his work at the Commissary. This factor likewise weighs against a finding that DeCA was Plaintiff's joint employer. *See Jerome,* 15 F.Supp. 3d at 1237 (granting summary judgment for Hertz and finding it was not plaintiff's joint employer where there was no persuasive evidence Hertz had the power to hire or fire plaintiff; a majority of the plaintiffs did not believe they worked for Hertz; and Hertz had no control over their pay); *Llampallas v. Mini–Circuits, Lab, Inc.,* 163 F.3d 1236, 1242, 1244-45 (11th Cir. 1998) (vacating district court's judgment holding defendant liable for discrimination claim where it did not make the decision to terminate plaintiff). Indeed, even if DeCA had any influence on whether BAC retained Plaintiff, such influence would be insufficient to render DeCA Plaintiff's joint employer. *Morrison,* 383 F.3d at 1255 (noting that even if "a major client can pressure an employer into firing a particular individual [it] does not transmute that client into that individual's employer.").

Thus, viewing the facts in the light most favorable to Plaintiff, and construing Plaintiff's allegations liberally, the undersigned finds that DeCA was not Parker's employer or joint employer. Notably, no reasonable juror could find that DeCA exhibited the type of control necessary to render it a joint employer. This is true regardless of whether the undersigned deems as admitted the matters related to Plaintiff's failure to respond to Defendant's Requests for Admissions. Therefore, summary judgment should be granted in favor of Defendant.

## IV.  FAILURE TO PROSECUTE OR COMPLY WITH THE COURT'S ORDERS

In Defendant's Supplement to its Motion for Summary Judgment, ECF Doc. 60, Defendant argues judgment is warranted because Plaintiff has failed to prosecute this action or comply with this Court's orders. Defendants point out that Plaintiff has conducted no discovery and has refused to participate in discovery. Plaintiff's recalcitrance in that regard has been thoroughly documented by the undersigned in prior orders. *See* ECF Docs. 47, 55, 59. Nonetheless, while the undersigned obviously does not condone such conduct, the undersigned also does not find it necessary to address the motion on this ground as the undersigned finds that Defendant is entitled to judgment on the merits.

Accordingly, it is RESPECTFULLY RECOMMENDED that,

1.    Defendant's Motion for Summary Judgment (ECF Doc. 52) be GRANTED.

Case No. 3:19cv126-MCR-HTC

2.     The clerk be directed to close this case.

At Pensacola, Florida this 17th day of April 2020.

*/s/ Hope Thai Cannon*
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

## <u>NOTICE TO THE PARTIES</u>

Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the magistrate judge and all other parties.  A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.